UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

MARTIN DEKOM, and on behalf the LITTLE PEOPLE
             Plaintiff

   -against-                                                      17 CV-

                                                                  COMPLAINT

FANNIE MAE, BANK OF AMERICA N.A., NATIONSTAR
MORTGAGE LLC, NASSAU COUNTY CLERK,
             Defendants

I, Martin Dekom, *pro se* plaintiff, and on behalf of the Little People, by Order to

Show Cause, complain for injunctive relief, damages, penalties, and other relief. For

my complaint, with its exhibits and appendices, I allege and state as follows, under

penalty of perjury:

**Jurisdiction and Venue**

1. FDCPA is the Fair Debt Collections Practices Act. RESPA is the Real Estate

   Settlement Practices Act. CPPA is the Washington DC Consumer Protection

   Practices Act, DC Code 28-3901 et.seq.

2. Jurisdiction is by federal questions (FDCPA, RESPA), 28 USC 1331; Diversity-

   over $75k matter, Dekom (NY), Fannie Mae (DC), Bank of America (NC),

   Nationstar (TX), Nassau Clerk (NY), 28 USC 1332; and affecting regulation of

   commerce, 28 USC 1337. Supplemental jurisdiction of NY actions and DC

   claims is by 28 USC 1367 due to a common nucleus of operative fact.

3. Venue of Washington, DC is proper as Fannie Mae, the prime defendant, is domiciled and created policies and agreements there. It is a convenient forum based on geography. E.D.N.Y. is not available due to corruption by a criminal enterprise related to the instant racket.

4. The events surrounding this action implicate numerous laws. Not all possible causes of action are pursued here due to the prohibition of "shotgun style" litigation and plaintiff's limited resources. He reserves the right to bring actions not brought here.

**Parties**

5. Plaintiff Martin Dekom is a resident of New York and is a defendant/appellant in multiple New York foreclosure actions.

6. The Little People, upon whose behalf Dekom brings this matter per DC Code 28-3901a 4, are the poor of America in or facing judicial foreclosure, who are ill-equipped to fight the professional liars employed by Fannie Mae's agents, who stand to be victimized by them, and who have a God given right to have their day in court without being shorn of all human dignity.

7. Fannie Mae is the Federal National Mortgage Association, a corporation based in Washington, DC, a government sponsored enterprise, and an instrumentality of government policy, in Federal Housing Finance Agency conservatorship.

8. Nationstar Mortgage LLC (Nationstar) is a corporation based in Coppell, TX, a mortgage servicer, and at all times an agent of Fannie Mae, and also a party as it is a litigant in the New York state claims.

9. Bank of America, National Association (BofA), is a mortgage servicer, was at relevant times an agent of Fannie Mae, and also a party as it is a litigant in the New York state claims.

10. Nassau County Clerk is an official office of the municipality of Nassau County, NY, and also a party as it is a litigant in the New York state claims.

**The Nature of the Case**

11. The actions and incidents are more fully explained in the supporting Dekom Declaration, Appendix UDAP, Appendix RESPA, and Exhibits N1, N1A, N2, N2A, INQ1, RSP, RA, and ZZ.

12. Judicial notice applies to all actions referenced, specifically, Bank of America v. Dekom, recaptioned Nationstar v. Dekom (Nassau County Supreme Court #13-8566), and its appeal, Nationstar v. Dekom (Appellate, 2nd Department, # 15-02955); a second foreclosure action, "Nationstar II", Nationstar v. Dekom (Nassau 16-2306, and its interlocutory appeal, Nationstar v. Dekom (Appellate #16-12018), as well as published documents, and public databases.

13. 2006 was a good year for plaintiff Martin Dekom. He bought a fixer-upper, had a good job and career, and a new family. He was mortgaged to the hilt,

and as the financial crisis wore on for years, predictably, Dekom couldn't pay his mortgage.

14. His mortgage agreement with Countrywide provided for this. Dekom has, and at all times, acted in good faith and in compliance with the mortgage contract he made with Countrywide FSB. The defendants, claiming to be successors in interest, have not.

15. Then came foreclosure. This is a story familiar to a million Americans, but this was different: Dekom was put through an illegal process, a racket which expedites New York's notoriously long foreclosure process by removing most of the rights and protections of the defendant. Dekom was prevented from raising defenses.

16. The racket also serves to harass and coerce defendants into submission. Dekom was harassed and coerced, see Appendix A UDAP.

17. Dekom was haled into a fraudulent court, which at the time he took to be legitimate. The result of this "foreclosure inquest" was a judgment of foreclosure.

18. "Foreclosure inquest" was created by a mix of public corruption and a cabal of mortgage industry insiders to serve as their private court. It does not exist in any law and is illegal.

19. The obvious benefit of this racket to Fannie Mae, its servicers, and their vendors is money. For the state actors, it is also money: every foreclosure generates a tangible financial benefit which is used as a patronage award to the politically connected. This is not a new theory (see "Investigation Shows Politicians Profit off Foreclosure Sales," WNYC News, at http://www.wnyc.org/story/299091-court-appointments-go-political-insiders/ ). This award can be used an illicit lottery ticket for tens of thousands of dollars.

20.     Nassau county, known for corruption and patronage, has refined the process, in partnership with Fannie Mae, BofA, Nationstar, and their agents.

21. Dekom got rooked, so he appealed. He puzzled together all the legal weirdness and uncovered the fraud of "foreclosure inquest."

22.      He also discovered collusion in the appellate court, which led to his discovery of a robosigning scam.

23.     As Dekom asked more questions and did more research, people tried to throw him off the scent. At one point he was thrown out of the Nassau County Records Office "for his own safety" because, allegedly, there was an attack squirrel on the loose.

24.     In March 2016, Dekom got clobbered with an illegal second foreclosure lawsuit, while the first was still pending.

25.    He discovered that the case was made to look real to him, but in fact was being kept out of the normal judicial process, by the Nassau County Clerk.

26.    The Nassau Clerk's "secret docket" practice was recently exposed (see http://www.newsday.com/long-island/investigations/secret-docket-hides-court-cases-in-nassau-county-1.13177811 ).

27.    This led to the discovery of another scam, that the Nassau County Clerk was illegally removing and altering public records, and influencing the selection of judges.

28.    Dekom discovered other scams as well. It seemed that every time he pulled a thread, he came away with a sweater.

29.    Fundamental here, the facts show that the foreclosure process is fraught with illegality and is a substantive perversion of the law.

30.    For instance, both Dekom's foreclosure cases still continue, although Dekom moved to dismiss twice, both times unopposed, and counterclaimed, also unopposed, and moved for default twice, also unopposed.

31.He has been threatened with additional lawsuits, including for defamation.

32.    Obviously, this is a rigged process. It is designed to exploit *pro se* defendants, and provide illicit political patronage awards.

33.    Dekom doesn't feel like being exploited any more so he is busting it up, and taking a stump grinder to its roots.

34.    The evidence shows that this it isn't the result of one cowboy attorney, or a law firm gone rogue, or even one servicers' bad practices. The evidence implicates a multiple of each. The common thread is Fannie Mae.

35.    This is because Fannie Mae put a bounty on the poor in foreclosure, paying a fat bonus if the matter is uncontested. However, whether or not a defendant contests an action is not within a plaintiff's control.

36.    Simply put, Fannie Mae paid a $750 bounty for having a defendant default, even though those cases require much less legal work.

37.     Based on the recent history of the industry, Fannie Mae knew that incentivizing servicers for a result they could not legally control would result in them achieving that end illegally, as proven here.

38.    On information and belief, after Dekom outlined this to an attorney pursuant to a *qui tam* inquiry, Fannie Mae was informed of this, and then changed its fees to incorporate the bounty.

39.    Dekom believes this was done to preserve the benefits of the default bounty against Dekom's anticipated assault.

40.    On information and belief, Fannie Mae uses other improper incentives which form an illicit bonus. After decades of foreclosures, the costs of an action in any jurisdiction can be calculated to the penny. However, the "Fannie Mae uniform instrument" used for mortgages to be insured by Fannie Mae

stipulates that in the event of foreclosure, the borrower will pay an undefined amount of attorneys' fees and costs of litigation.

41. In effect, at closing the borrower is forced to agree to write a blank check in the event of foreclosure. This is unconscionable and the public policy eschews hidden fees.

42. Fannie Mae foreclosures are brought by the servicer. Fannie Mae reimburses the servicer for the hard costs (i.e., filing fee).Fannie Mae requires the servicer to repay them, if the foreclosure judgment awards them.

43. On information and belief, those recoveries are not being ultimately repatriated to Fannie Mae, they are retained by foreclosure law firms.

44. This acts as an illegal bonus which is based on that borrower's blank check. Predictably, they are subject to padding, at the borrowers' expense.

45. Fannie Mae's illicit bonus practice incentivized the violations here.

46. The financial crisis revealed the mortgage industry's heinous foreclosure practices. After billions in lawsuits, significant regulatory reforms, massive public outcry, and getting clubbed like a baby seal with repeated federal Consent Orders and a nationwide settlement, you'd think they'd learn.

47. Their recidivism becomes explainable, and predictable, with the revelation of Fannie Mae's illicit compensation schemes.

48.     Fannie Mae's bounty and slush fund bonus provide a strong incentive for servicers to use their size to twist the arms of the poor, instead of conducting themselves like good corporate citizens. They are counter to public policy.

49.     They may be "too big to fail," but they are not too big to punish. Until Fannie Mae is brought to heel, homeowners will relive the bad old days, as foreclosure dockets are perverted into All-You-Can-Eat buffets for lenders.

50.     The object of this action is to recompense Dekom for unlawful and illegal acts and prevent them from recurring.

**First Claim, RESPA** Fannie Mae, Nationstar, BofA, and their agents violated the Real Estate Settlement Practices Act, as elaborated in the Dekom Declaration, appendices, and exhibits.

51. Fannie Mae, BofA, and Nationstar are mortgage servicers as defined by RESPA. At all salient times they were agents of Fannie Mae.

52.     Dekom sent Qualified Written Requests and Notices of Error consistent with statutory requirements, particularizing errors (Exhibit RSP).

53.     The defendants failed to make a good faith investigation, provide an explanation, and bring resolution, as required by 12 C.F.R. § 1024.35, and as further described in Appendix RESPA.

54.     Typically, Dekom was falsely promised a further resolution date (except as noted) instad of the required due diligence and resolution.

55.   The dozens of violations detailed in Appendix RESPA are a pattern or practice of noncompliance.

56.   Fannie Mae is liable for the servicers' violations as they were its agents.

57.   It is also liable as Fannie Mae itself was the servicer.

58.   Dekom suffered actual damages described below, for which he seeks recompense.

**Second Claim, FDCPA** Fannie Mae, Nationstar, BofA, and their agents violated the Federal Debt Collections Practices Act as elaborated in the Dekom Declaration, appendices, and exhibits

59.   Fannie Mae, Nationstar, BofA, and their agents all acquired their interest in the debt after and specifically because it was in default, making them "debt collectors" covered by FDCPA.

60.   FDCPA prohibits unfair and deceptive acts (UDAP). These are also prohibited by the DC CPPA, Section 5 of the FTC Act, Sections 1031 and 1036 of the Dodd-Frank Act, and multiple regulatory settlements.

61. Fannie Mae, Nationstar, BofA, and their agents employed UDAPs in a pattern the natural consequence of which was to harass, oppress, and abuse Dekom as described and further described in Appendix UDAP, forming a continuing pattern and course of conduct. Dekom suffered actual damages described below, for which he seeks recompense and injunction.

62. The compensation arrangements of Fannie Mae and its agents, specifically the bounty on no-shows, and the reimbursement slush fund bonus, are unconscionable means of debt collection, and void being counter to public policy.

**Third Claim, CPPA** Fannie Mae, Nationstar, BofA, and their agents violated the DC Consumer Protection Procedures Act as elaborated in the Dekom Declaration, appendices, and exhibits.

63. There exists a "consumer merchant relationship" between Dekom, Fannie Mae, and its agents, BofA and Nationstar, such that Dekom has been subjected to their trade practices.

64. Fannie Mae and its agents, as described and further described in Appendix UDAP, engaged in a continuing pattern and course of unlawful conduct, forming a trade practice, which violates D.C. Code § 28-3904 et.seq. as follows:

65. they misrepresented material facts that had a tendency to mislead, in violation of DC Code 28-3904 (e),

66. and omitted material facts resulting in a tendency to mislead, in violation of 28-3904 (f),

67. and so used innuendo or inference in violation of 28-3904 (f-1),

68. and represented that it had certain rights and remedies which it did not have (which in fact violated procedures and laws) in violation of 28-3904 (e-1),

69. and violated 28-3904 (m) by threatening and then harassing Dekom by subjecting him to an illegal "foreclosure inquest,"

70. and that in Fannie Mae's "Uniform instrument" the practice of not defining known fees, such as Attorney fees and reimbursable costs, is a material omission which had a tendency to mislead,

71. and are unconscionable terms in violation of 28-3904 (r) as the vagueness lends itself to padding for an undisclosed bonus, and acts to conceal a bounty it pays for *pro se* defendants, as described.

72. Dekom suffered actual damages described below, for which he seeks recompense, treble damages, temporary and permanent injunction, and punitive damages, for further prevention.

**Fourth Claim, Fraud** Fannie Mae, Nationstar, BofA, and their agents are guilty of fraud and wrongful foreclosure as elaborated in the Dekom Declaration, appendices, and exhibits.

73. Fannie Mae, Nationstar, BofA, and their agents purported that the foreclosure process was a *bona fide* legal proceeding, including the "foreclosure inquest," when they knew it was not.

74. They materially deceived Dekom, as he relied on that representation and participated, including in the fraudulent "foreclosure inquest" of 10/30/14, perpetrated at the Nassau Supreme Courthouse.

75. He suffered damages as described below.

76. The same actions were also wrongful foreclosure, in that the process Dekom was subjected to was contrary to law.

77. Dekom suffered damages described below, for which he seeks recompense, and temporary and permanent injunction, and punitive damages, for further prevention.

**Fifth Claim,** Fannie Mae, Nationstar, BofA, and their agents are guilty of malicious prosecution as elaborated in the Dekom Declaration, appendices, and exhibits.

78. Fannie Mae, Nationstar, BofA, and their agents brought an action, Index 16-2306 (Nationstar II), in March 2016, with a purpose other than protecting themselves from an ancient mortgage.

79. They had no reasonable grounds for the action as they knew the ancient mortgage was no threat, and did not have standing.

80. The true intent was to revive their expired lis pendens and foreclose.

81. Nationstar admitted that it was a foreclosure and to salient allegations.

82.     Dekom suffered damages described below, for which he seeks recompense, and temporary and permanent injunction, and punitive damages, for further prevention.

## DAMAGES

83.     The actions described inflicted actual damages upon Dekom, for which he asks recompense as follows:

84.     He was deprived of the value of his house. Nationstar has admitted to damages of $922,000.

85.     He was deprived of his monthly income calculated at $7,053, from 10/25/13 ongoing, attributable to Fannie Mae and its agents. As of April 2017 this is 42 months, a current subtotal of $296,226, ongoing.

86.     Wherefore, Dekom requests treble the two sums of actual damages, which is a subtotal is $3,654,678, ongoing, paid to him, and

87.     liability assessed against defendants in the ratio of Fannie Mae 50%, Nationstar 35%, and BofA 15%.

88.     Dekom was humiliated, harassed, threatened, and abused. He seeks punitive damages in the amount of $3,654,000, paid to him, and

89.     liability assessed in the ratio of Fannie Mae 50%, Nationstar 35%, and BofA 15%, which includes the $94,000 punitive damages to which Nationstar has already admitted.

90.     Dekom requests punitive damages against Fannie Mae in the amount of $1 billion, to be used exclusively for making mortgages to those displaced by a judgment of foreclosure, using the USDA rural guidelines or similar 100% financing, without income or value limits.

91. And further damages of the type and amount the Court deems proper.

## Injunctive RELIEF

92.     Wherefore, Dekom requests preliminary injunctive relief, as follows:

93.     Enjoining Fannie Mae, Nationstar, BofA, and their agents from paying or causing to be paid:

94.     -any bounty for non-appearing defendants, such that no attorney fee exceeds the base amount previously described in the schedule cited, which in lower New York is $3,500;

95.     -any further fees to prior bounty recipients until such fees are recovered,

96.     -any attorneys fee in an action in which a "foreclosure inquest" was conducted, and any further fees to such parties until such fees are recovered, and

97.     Enjoining Fannie Mae, Nationstar, BofA, and their agents from requesting or receiving reimbursement in a foreclosure action for any fee whose approximate value was known to it but not described in the loan

agreement presented at closing, and not described with reasonable accuracy in its complaint;

98.     Enjoining Fannie Mae, Nationstar, BofA, and their agents from receiving or retaining the proceeds of any foreclosure sale in which the RJI was not filed simultaneous to the summons and complaint,

99.     Enjoining Fannie Mae, Nationstar, BofA, and their agents from receiving or retaining the proceeds of any foreclosure sale in which a motion for poor status for the defendant was not made and entered on the *prima facie* evidence of being in foreclosure,

100.    Enjoining Fannie Mae, Nationstar, BofA, and their agents from receiving or retaining the proceeds of any foreclosure sale in which a "foreclosure inquest" was conducted;

101.    Enjoining Fannie Mae from certifying, recertifying or otherwise approving for business with it, any servicer who used a "foreclosure inquest,"

102.    Enjoining Fannie Mae, Nationstar, BofA, and their agents from doing any further business with any law firm or attorney whose prosecution included a "foreclosure inquest."

103.    Enjoining Fannie Mae, Nationstar, BofA, and their agents from instituting further lawsuits against Dekom, without prior permission of this court,

104.    Enjoining Fannie Mae, Nationstar, BofA, and their agents from alleging, stating, or inferring any set of facts or argument, to any court, agency, or SRO, which conflict with those it admitted to in Dekom's two Motions to Dismiss (Aug 2013 and May 2016 -amended June 2016), and Answer (Nov 2016),

105.    Enjoining the Nassau County Clerk from accepting for filing any foreclosure summons and complaint without an RJI, or without a firsthand affidavit of service claiming to have delivered preforeclosure notices, or accepting any further submission in such cases already filed.

106.    Enjoining Fannie Mae, Nationstar, BofA, and their agents from filing any foreclosure summons and complaint without an RJI or without a firsthand preforeclosure notices affidavit of service,or from filing any further submissions, other than to discontinue, in foreclosure actions in which an RJI was not filed with the summons and complaint.

107.    And Wherefore, Dekom requests permanent injunctive relief, as follows, that the preliminary injunction be made permanent.

**Further relief**

And Wherefore, Dekom requests that relief of any type which the Court deems perfection of justice.

STATE OF NEW YORK    )
                                           ss:
COUNTY OF NASSAU    )

## VERIFICATION

I, Martin Dekom, the undersigned, the plaintiff named in the foregoing application, being duly sworn, says: I have read the foregoing petition, motions, and papers subscribed by me and know the contents thereof and the same is true of my own knowledge, except as to those matters herein stated to be alleged upon information and belief, and as to those matters I believe it to be true.

_____
Signature of Plaintiff

On the _20th_ _ Day of _April_, 2017 before me personally came Martin Dekom to me known to be the person described herein and who executed the foregoing instrument. Such person duly swore to such instrument before me and duly acknowledged that he executed the same.

_____
NOTARY PUBLIC

STEPHEN D PINZINO
NOTARY PUBLIC STATE OF NEW YORK
NASSAU COUNTY, LIC. #02PI4814721
COMM. EXP. _____    11/23/2017