UNITED STATES DISTRICT COURT                         <u>**JURY DEMAND**</u>
EASTERN DISTRICT OF NEW YORK
MARTIN DEKOM, and on behalf the LITTLE PEOPLE
          Plaintiff

    -against-                                17 CV-2712

                                                 COMPLAINT

FANNIE MAE, BANK OF AMERICA N.A., NATIONSTAR
MORTGAGE LLC, NASSAU COUNTY CLERK, ELISABETTA COSCHIGNANO,
WILLIAM RICCIO, BERKMAN HENOCH LAW FIRM, R. BRUCE COZZENS,
THOMAS A. ADAMS, GEORGE PECH, ELLEN BRANDT, GROSS POLOWY
LAW FIRM, SANDELANDS EYET LAW FIRM, ERIK VALLELY,
MATTHEW BURROWS, BRIAN GOLDBERG, HANS AUGUSTIN, LAURA
STRAUSS, OSCAR PRIETO, GEOFFREY JACOBSON, KEIRAN DOWLING,
LAURENCE CHIRCH, APRILANNE AGOSTINO, DARRELL JOSEPH, RANDALL
ENG, ALAN SHEINKMAN, 8 MOTIONS CLERKS, 2nd DEPARTMENT
APPELLATE JUDGES, GOLDMAN SACHS AS OWNER OF "POOL 1",
PAWNS 1-100

                    Defendants

I, Martin Dekom, *pro se* plaintiff, and on behalf of the Little People, by Order to

Show Cause, complain for injunctive relief, damages, penalties, and other relief. For

my complaint, with its exhibits and appendices, I allege and state as follows, under

penalty of perjury:

**Jurisdiction and Venue**

1. FDCPA is the Fair Debt Collections Practices Act. RESPA is the Real Estate

   Settlement Practices Act. CPPA is the Washington DC Consumer Protection

   Practices Act, DC Code 28-3901 et.seq. RICO is the Racketeer Influenced and

   Corrupt Organizations Act.

1

2. Jurisdiction is by federal questions (FDCPA, RESPA), 28 USC 1331; Diversity- over $75k matter, Dekom (NY), Fannie Mae (DC), Bank of America (NC), Nationstar (TX), Nassau Clerk (NY), 28 USC 1332; and affecting regulation of commerce, 28 USC 1337. Supplemental jurisdiction of NY actions and DC claims is by 28 USC 1367 due to a common nucleus of operative fact.

3. Venue of Washington, DC is proper as Fannie Mae, the prime defendant, is domiciled and created policies and agreements there. It is a convenient forum based on geography. E.D.N.Y. is not available due to corruption by a criminal enterprise related to the instant racket.

4. Dekom has been unlawfully deprived of the venue of his choice as this action now proceeds in EDNY.

5. The events surrounding this action implicate numerous laws. Not all possible causes of action are pursued here due to the prohibition of "shotgun style" litigation and plaintiff's limited resources. He reserves the right to bring actions not brought here.

## Parties

6. Plaintiff Martin Dekom is a resident of New York and is a defendant/appellant in multiple New York foreclosure actions.

7. The Little People, upon whose behalf Dekom brings this matter per DC Code 28-3901a 4, are the poor of America in or facing judicial foreclosure, who are

2

ill-equipped to fight the professional liars employed by Fannie Mae's agents, who stand to be victimized by them, and who have a God given right to have their day in court without being shorn of all human dignity.

8. Fannie Mae is the Federal National Mortgage Association, a corporation based in Washington, DC, a government sponsored enterprise, and an instrumentality of government policy, in Federal Housing Finance Agency conservatorship.

9. Nationstar Mortgage LLC (Nationstar) is a corporation based in Coppell, TX, a mortgage servicer, and at all times an agent of Fannie Mae, and also a party as it is a litigant in the New York state claims.

10.    Bank of America, National Association (BofA), is a mortgage servicer, was at relevant times an agent of Fannie Mae, and also a party as it is a litigant in the New York state claims.

11. "Pool #1" is the alias for the entity which claims ownership of a mortgage against the Dekom property at 34 High Street, Manhasset, NY., and is believed to be owned by Goldman Sachs & Co. through its subsidiary MTGLQ Investors, L.P., based on press release of Fannie Mae, see http://www.fanniemae.com/portal/media/financial-news/2017/non-performing-loan-sale-winner-6567.html . The real party in interest is Goldman Sachs.

12. Nassau County Clerk is an official office of the municipality of Nassau County, NY, and also a party as it is a litigant in the New York state claims. Maureen O'Connell is the Clerk, and here personally and in official capacity.

13. William Riccio and Elisabetta Coschignano are law clerks of the Nassau Supreme Court, and here personally and in official capacity.

14. George Peck, R. Bruce Cozzens, and Thomas A. Adams were judges of the Nassau County Supreme Court at salient times, and here personally and in official capacity.

15. Berkman Henoch is a law firm based in Garden City, NY, retained to prosecute Dekom, through its attorneys Erik Vallely and Matthew Burrows, who at all times were agents of Fannie Mae.

16. Gross Polowy Orlans is a law firm based in Williamsville, NY, retained to prosecute Dekom, through its attorneys Brian Goldberg, Oscar Prieto (subcontracted), Hans Augustin, Laura Strauss, who at all times were agents of Fannie Mae.

17. Ellen Brandt, purportedly an employee of Nationstar, and believed to be a resident of New Jersey.

18. Sandelands Eyet is a law firm based in Bedminster, NJ, retained to prosecute Dekom, through its attorneys Geoffrey Jacobson, Kieran Dowling, Laurence Chirch, who at all times were agents of Fannie Mae.

4

19. "8 Motion Clerks" are individuals who work for the 2nd Department, Appellate Division, Supreme Court of NY, located in Brooklyn, NY.

20.     Aprilanne Agostino is the Clerk of the Court of the 2nd Department and Darrell Joseph is the Deputy Clerk of the 2nd Department, responsible for training the clerks. All are here personally and in official capacity.

21. Randall Eng was the Chief Justice of the 2nd Department at relevant times up to January 2, 2018, and Alan Sheinkman the same after that date, responsible for training the staff, including Agostino and Joseph. All are here personally and in official capacity.

22.     2nd Department Appellate judges are judges of the Supreme Court responsible for appeals who have participated in the schemes as described. All are here personally and in official capacity

23.     Pawns 1-100 are accomplices who knowingly took part in the fraud and conspiracy to violate Dekom's rights whose names are unknown.

## The Nature of the Case

24.     The actions and incidents are more fully explained in the supporting Dekom Declaration, Appendix UDAP, Appendix RESPA, and Exhibits N1, N1A, N2, N2A, N2A2, INQ1, RSP, RA, and ZZ, as amended, and the added Dekom Second Declaration.

25.     Judicial notice applies to all actions referenced, specifically, Bank of America v. Dekom, recaptioned Nationstar v. Dekom (Nassau County Supreme Court #13-8566), and its appeal, Nationstar v. Dekom (Appellate, 2nd Department, # 15-02955); a second foreclosure action, "Nationstar II", Nationstar v. Dekom (Nassau 16-2306), and its interlocutory appeal, Nationstar v. Dekom (Appellate #16-12018), and its final appeal Nationstar v. Dekom (Appellate #17-8676), as well as published documents, and public databases.

26.     2006 was a good year for plaintiff Martin Dekom. He bought a fixer-upper, had a good job and career, and a new family. He was mortgaged to the hilt, and as the financial crisis wore on for years, predictably, Dekom couldn't pay his mortgage.

27.     His mortgage agreement with Countrywide provided for this. Dekom has, and at all times, acted in good faith and in compliance with the mortgage contract he made with Countrywide FSB. The defendants, claiming to be successors in interest, have not.

28.     Then came foreclosure.  This is a story familiar to a million Americans, but this was different: Dekom was put through an illegal process, a racket which expedites New York's notoriously long foreclosure process by removing

most of the rights and protections of the defendant. Dekom was prevented from raising defenses.

29.    The racket also serves to harass and coerce defendants into submission. Dekom was harassed and coerced, see Dekom Declaration and Appendix UDAP.

30.    Dekom was haled into a fraudulent court, which at the time he took to be legitimate. The fake hearing was orchestrated by Nassau Clerk Maureen O'Connell, attorney Brian Goldberg and his firm, Gross Polowy. It was presided by George Peck, who knowingly acted outside of his jurisdiction. Ellen Brandt fraudulently posed as a witness. The result of this "foreclosure inquest" was a judgment of foreclosure obtained illegally.

31. "Foreclosure inquest" was created by a mix of public corruption and a cabal of mortgage industry insiders to serve as their private court. It does not exist in any law and is illegal.

32.    The obvious benefit of this racket to Fannie Mae, its servicers, and their vendors is money. For the state actors, it is also money: every foreclosure generates a tangible financial benefit which is used as a patronage award to the politically connected. This is not a new theory (see "Investigation Shows Politicians Profit off Foreclosure Sales," WNYC News, at

http://www.wnyc.org/story/299091-court-appointments-go-political-

insiders/ ). This award can be used an illicit lottery ticket for tens of thousands of dollars. It is a form of embezzlement.

33.     Nassau county, known for corruption and patronage, has refined the process, in partnership with Fannie Mae, BofA, Nationstar, and their agents.

34.     Dekom got rooked, so he appealed. He puzzled together all the legal weirdness and uncovered the fraud of "foreclosure inquest." This occurred in June 2016.

35.      He also discovered collusion in the appellate court, which led to his discovery of a robosigning scam. 8 Motions Clerks, their supervisors Darell Joseph and Aprilanne Agostino, the defendant appellate judges, including Randall Eng, orchestrated a scheme by which the Clerks adjudicate almost all matters before the court, in the judges' names, and then robosign the Clerk's name. This deprived the people of NY, including Dekom, of the judges' honest services, aided the foreclosure fraud, and violated Dekom's fundamental rights to petition, Due Process, and Equal Protection, as described in Dekom Declaration.

36.     As Dekom asked more questions and did more research, people tried to throw him off the scent. At one point he was thrown out of the Nassau County Records Office "for his own safety" because, allegedly, there was an attack squirrel on the loose.

37.     In March 2016, Dekom got clobbered with an illegal second foreclosure lawsuit, while the first was still pending.

38.     He discovered that the case was made to look real to him, but in fact was being kept out of the normal judicial process, by the Nassau County Clerk.

39.      The Nassau Clerk's "secret docket" practice was recently exposed (see http://www.newsday.com/long-island/investigations/secret-docket-hides-court-cases-in-nassau-county-1.13177811 ).

40.     This led to the discovery of another scam, that the Nassau County Clerk was illegally removing and altering public records, and influencing the selection of judges.

41. Dekom discovered other scams as well. It seemed that every time he pulled a thread, he came away with a sweater.

42.     Fundamental here, the facts show that the foreclosure process is fraught with illegality and is a substantive perversion of the law. The cases are beng fixed.

43.     For instance, both Dekom's foreclosure cases still continue, although Dekom moved to dismiss twice, both times unopposed, and counterclaimed, also unopposed, and moved for default twice, also unopposed.

44.     He has been threatened with additional lawsuits, including for defamation.

45.     The case fixing scheme is designed to exploit *pro se* defendants, and provide illicit political patronage awards.

46.     Dekom doesn't feel like being exploited any more so he is busting it up, and taking a stump grinder to its roots.

47.     The evidence shows that this it isn't the result of one cowboy attorney, or a law firm gone rogue, or even one servicers' bad practices. The evidence implicates a multiple of each. The common thread is Fannie Mae.

48.     This is because Fannie Mae put a bounty on the poor in foreclosure, paying a fat bonus if the matter is uncontested. However, whether or not a defendant contests an action is not within a plaintiff's control.

49.     Simply put, Fannie Mae paid a $750 bounty for having a defendant default, even though those cases require much less legal work.

50.      Based on the recent history of the industry, Fannie Mae knew that incentivizing servicers for a result they could not legally control would result in them achieving that end illegally, as proven here.

51. On information and belief, after Dekom outlined this to an attorney pursuant to a *qui tam* inquiry, Fannie Mae was informed of this, and then changed its fees to incorporate the bounty.

52.     Dekom believes this was done to preserve the benefits of the default bounty against Dekom's anticipated assault.

53.     On information and belief, Fannie Mae uses other improper incentives which form an illicit bonus. After decades of foreclosures, the costs of an action in any jurisdiction can be calculated to the penny. However, the "Fannie Mae uniform instrument" used for mortgages to be insured by Fannie Mae stipulates that in the event of foreclosure, the borrower will pay an undefined amount of attorneys' fees and costs of litigation.

54.     In effect, at closing the borrower is forced to agree to write a blank check in the event of foreclosure. This is unconscionable and the public policy eschews hidden fees.

55.     Fannie Mae foreclosures are brought by the servicer. Fannie Mae reimburses the servicer for the hard costs (i.e., filing fee).Fannie Mae requires the servicer to repay them, if the foreclosure judgment awards them.

56.     On information and belief, those recoveries are not being ultimately repatriated to Fannie Mae, they are retained by foreclosure law firms.

57.     This acts as an illegal bonus which is based on that borrower's blank check. Predictably, they are subject to padding, at the borrowers' expense.

58.      Fannie Mae's illicit bonus practice incentivized the violations here.

59.     The financial crisis revealed the mortgage industry's heinous foreclosure practices. After billions in lawsuits, significant regulatory reforms, massive

public outcry, and getting clubbed like a baby seal with repeated federal Consent Orders and a nationwide settlement, you'd think they'd learn.

60.     Their recidivism becomes explainable, and predictable, with the revelation of Fannie Mae's illicit compensation schemes.

61. Fannie Mae's bounty and slush fund bonus provide a strong incentive for servicers to use their size to twist the arms of the poor, instead of conducting themselves like good corporate citizens. They are counter to public policy.

62.     They may be "too big to fail," but they are not too big to punish. Until Fannie Mae is brought to heel, homeowners will relive the bad old days, as foreclosure dockets are perverted into All-You-Can-Eat buffets for lenders.

63.     These schemes were intended to inflict extreme emtotional distress, through coercion and intimidation. Dekom suffered these effects, and has suffered anxiety and humiliation.

64.     The object of this action is to recompense Dekom for unlawful and illegal acts and prevent them from recurring.

**First Claim, RESPA** Fannie Mae, Nationstar, BofA, and their agents violated the Real Estate Settlement Practices Act, the Truth in Lending Act, as elaborated in the Dekom Declaration, appendices, and exhibits.

65.     Fannie Mae, BofA, and Nationstar are mortgage servicers as defined by RESPA. At all salient times they were agents of Fannie Mae, who is an agent of an unknown purported owner of a mortgage in "Pool 1."

66.     Dekom sent Qualified Written Requests and Notices of Error consistent with statutory requirements, particularizing errors (Exhibit RSP).

67.     The defendants failed to make a good faith investigation, provide an explanation, and bring resolution, as required by 12 C.F.R. § 1024.35, and as further described in Appendix RESPA.

68.     Typically, Dekom was falsely promised a further resolution date (except as noted) instead of the required due diligence and resolution.

69.      The dozens of violations detailed in Appendix RESPA are a pattern or practice of noncompliance.

70.     The defendants violated TILA by not disclosing to Dekom the multiple changes in ownership of the subject mortgage, each such incident subject to penalty of $4,000, trebled by the provisions of DC CPPA.

71. Fannie Mae is liable for the servicers' violations as they were its agents.

72.     It is also liable as Fannie Mae itself was the servicer.

73.     Dekom suffered actual damages described below, for which he seeks recompense.

**Second Claim, FDCPA** Fannie Mae, Nationstar, BofA, and their agents violated the Federal Debt Collections Practices Act as elaborated in the Dekom Declaration, appendices, and exhibits, as amended.

74. Fannie Mae, Nationstar, BofA, and their agents all acquired their interest in the debt after and specifically because it was in default, making them "debt collectors" covered by FDCPA.

75. FDCPA prohibits unfair and deceptive acts (UDAP). These are also prohibited by the DC CPPA, Section 5 of the FTC Act, Sections 1031 and 1036 of the Dodd-Frank Act, and multiple regulatory settlements.

76. Fannie Mae, Nationstar, BofA, and their agents employed UDAPs in a pattern the natural consequence of which was to harass, oppress, and abuse Dekom as described and further described in Appendix UDAP, forming a continuing pattern and course of conduct. Dekom suffered actual damages described below, for which he seeks recompense and injunction.

77. The compensation arrangements of Fannie Mae and its agents, specifically the bounty on no-show defendants, and the reimbursement slush fund bonus, are unconscionable means of debt collection, and void being counter to public policy.

14

**Third Claim, CPPA** Fannie Mae, Nationstar, BofA, and their agents violated the DC Consumer Protection Procedures Act as elaborated in the Dekom Declaration, appendices, and exhibits.

78.     There exists a "consumer merchant relationship" between Dekom, Fannie Mae, and its agents, BofA and Nationstar, such that Dekom has been subjected to their trade practices.

79.     Fannie Mae and its agents, as described and further described in Appendix UDAP, engaged in a continuing pattern and course of unlawful conduct, forming a trade practice, which violates D.C. Code § 28-3904 et.seq. as follows:

80.     they misrepresented material facts that had a tendency to mislead, in violation of DC Code 28-3904 (e),

81.     and omitted material facts resulting in a tendency to mislead, in violation of 28-3904 (f),

82.      and so used innuendo or inference in violation of 28-3904 (f-1),

83.     and represented that it had certain rights and remedies which it did not have (which in fact violated procedures and laws) in violation of 28-3904 (e-1),

84.     and violated 28-3904 (m) by threatening and then harassing Dekom by subjecting him to an illegal "foreclosure inquest,"

15

85.     and that in Fannie Mae's "Uniform instrument" the practice of not defining known fees, such as Attorney fees and reimbursable costs, is a material omission which had a tendency to mislead,

86.     and are unconscionable terms in violation of 28-3904 (r) as the vagueness lends itself to padding for an undisclosed bonus, and acts to conceal a bounty it pays for *pro se* defendants, as described.

87.     Dekom suffered actual damages described below, for which he seeks recompense, treble damages, temporary and permanent injunction, and punitive damages, for further prevention.

**Fourth Claim, Fraud** Fannie Mae, Nationstar, BofA, and their agents are guilty of fraud and wrongful foreclosure as elaborated in the Dekom Declaration, appendices, and exhibits, in both actions brought in Nassau County Supreme Court.

88.     Fannie Mae, Nationstar, BofA, and their agents purported that the foreclosure process was a *bona fide* legal proceeding, including the "foreclosure inquest," when they knew it was not.

89.     They materially deceived Dekom, as he relied on that representation and participated, including in the fraudulent "foreclosure inquest" of 10/30/14, perpetrated at the Nassau Supreme Courthouse.

90.     He suffered damages as described below.

91. The same actions were also wrongful foreclosure, in that the process Dekom was subjected to was contrary to law.

92. Dekom suffered damages described below, for which he seeks recompense, and temporary and permanent injunction, and punitive damages, for further prevention.

**Fifth Claim,** Fannie Mae, Nationstar, BofA, and their agents are guilty of malicious prosecution as elaborated in the Dekom Declaration, appendices, and exhibits.

93. Fannie Mae, Nationstar, BofA, and their agents brought an action, Index 16-2306 (Nationstar II), in March 2016, with a purpose other than protecting themselves from an ancient mortgage.

94. They had no reasonable grounds for the action as they knew the ancient mortgage was no threat, and did not have standing.

95. The true intent was to revive their expired lis pendens and foreclose.

96. Nationstar admitted that it was a foreclosure and to salient allegations.

97. Dekom suffered damages described below, for which he seeks recompense, and temporary and permanent injunction, and punitive damages, for further prevention.

98. The heinous nature of the racket, resulting in billions of ill gotten gains, merits significant increase in the damages.

**Sixth Claim**, Nassau Clerk O'Connell, George Peck, Thomas A. Adams, and Pawns, conspired to deprive Dekom of his civil rights, his right to petition, Due Process substantively and procedurally, Equal Protection, 1st Amendment political speech, by and through unlawful conduct, including a case fixing scheme in which legal filings were altered, diverted, destroyed, blocked, decided by parties not empowered to do so, by and through applying extra-legal processes to Dekom, depriving Dekom of legal protections available to others, caused by failure to train, and fraud.

**Seventh Claim**, Clerk Agostino, Deputy Clerk Joseph, 8 Motions Clerks, Chief Judges Randell Eng and Alan Sheinkman, and the Appellate judges of the 2nd Department, conspired to deprive Dekom of his civil rights, his right to petition, Due Process substantively and procedurally, Equal Protection, 1st Amendment political speech, by and through unlawful conduct, including a case fixing scheme in which legal filings were altered, diverted, destroyed, blocked, decided by parties not empowered to do so, by and through applying extra-legal processes to Dekom, depriving Dekom of legal protections available to others, caused by failure to train, and fraud.

**Eighth Claim,** the defendants associated and acted in concert to form an ongoing enterprise, as defined, 18 U.S.C. § 1961(4). Its purpose was to effect a racketeering scheme in violation of the Racketeering Influence Corrupt

Organizations Act, 18 U.S.C. § 1962(c) and (d), as particularized in the Dekom Second Declaration, and all prior exhibits. Alternatively, each member of the Double Recovery Enterprise constitutes a single entity "enterprise" of 18 U.S.C. § 1961(4), through which the members of the enterprise conducted a pattern of racketeering activity. The separate status of each member facilitated the fraudulent scheme and shielded the core scheme. At its core is the illicit double recovery of defaulted mortgage notes. The previously described fraud schemes, such as foreclosure surplus embezzlement, are sub-schemes which work alongside and in aid of the Double Recovery Enterprise.

**DAMAGES**

99.    The actions described inflicted actual damages upon Dekom, for which he asks recompense as follows:

100.    He was deprived of the value of his house. Nationstar has admitted to damages of $922,000.

101.    He was deprived of his monthly income calculated at $7,053, from 10/25/13 ongoing, attributable to Fannie Mae and its agents. As of January 25, 2018 this is 51 months, a current subtotal of $359,703 in economic damages, ongoing.

102.    He was deprived of his rightful share of the fee paid from the buyer of Pool 1, Goldman Sachs through its subsidiary MTGLQ Investors, L.P., to

19

Fannie Mae. That amount, based on the cover bid of 80.24% of the UPB, of an alleged Dekom principal balance of $358,507.19, is $287,666,

103.    He has suffered emotional distress and humiliation for which he should be compensated in the same amount as his lost wages.

104.    Wherefore, Dekom requests treble the four sums of actual damages, which is a subtotal is $5,787,216, ongoing, paid to him, as provided under the CPPA statute, and also through the RICO statute, and

105.    liability assessed against defendants in the ratio of Fannie Mae and it's agents of 75%, and all others 25%.

106.    Dekom was humiliated, harassed, threatened, and abused by the shocking and heinous conduct of defendants. He seeks punitive damages in the amount of $9,000,000, paid to him, which includes the $94,000 punitive damages to which Nationstar has already admitted, and

107.    liability assessed against corporate and governmental parties, and against in personam defendants of not less than $200,000.

108.    Dekom requests punitive damages against Fannie Mae in the amount of $200 billion, representing the approximate sum of which it has double collected, to be used to recompense the parties whose mortgage notes it collected on more than once.

109.    And further damages of the type and amount the Court deems proper.

## Injunctive RELIEF

110.    Wherefore, Dekom requests preliminary injunctive relief, as follows:

111.    Enjoining Fannie Mae, Nationstar, BofA, and their agents from paying or causing to be paid:

112.    -any bounty for non-appearing defendants, such that no attorney fee exceeds the base amount previously described in the schedule cited, which in lower New York is $3,500;

113.    -any further fees to prior bounty recipients until such fees are recovered,

114.    -any attorneys fee in an action in which a "foreclosure inquest" was conducted, and any further fees to such parties until such fees are recovered, and

115.    Enjoining Fannie Mae, Nationstar, BofA, and their agents from requesting or receiving reimbursement in a foreclosure action for any fee whose approximate value was known to it but not described in the loan agreement presented at closing, and not described with reasonable accuracy in its complaint;

116.    Enjoining Fannie Mae, Nationstar, BofA, and their agents from receiving or retaining the proceeds of any foreclosure sale in which the RJI was not filed simultaneous to the summons and complaint,

117.    Enjoining Fannie Mae, Nationstar, BofA, and their agents from receiving or retaining the proceeds of any foreclosure sale in which a motion for poor status for the defendant was not made and entered on the *prima facie* evidence of being in foreclosure,

118.    Enjoining Fannie Mae, Nationstar, BofA, and their agents from receiving or retaining the proceeds of any foreclosure sale in which a "foreclosure inquest" was conducted;

119.    Enjoining Fannie Mae from certifying, recertifying or otherwise approving for business with it, any servicer who used a "foreclosure inquest,"

120.    Enjoining Fannie Mae, Nationstar, BofA, and their agents from doing any further business with any law firm or attorney whose prosecution included a "foreclosure inquest."

121.    Enjoining Fannie Mae, Nationstar, BofA, and their agents from instituting further lawsuits against Dekom, without prior permission of this court,

122.    Enjoining Fannie Mae, Nationstar, BofA, and their agents from alleging, stating, or inferring any set of facts or argument, to any court, agency, or SRO, which conflict with those it admitted to in Dekom's two Motions to Dismiss (Aug 2013 and May 2016 -amended June 2016), and Answer (Nov 2016),

123.    Enjoining the Nassau County Clerk from accepting for filing any foreclosure summons and complaint without an RJI, or without a firsthand affidavit of service claiming to have delivered preforeclosure notices, or accepting any further submission in such cases already filed.

124.    Enjoining Fannie Mae, Nationstar, BofA, and their agents from filing any foreclosure summons and complaint without an RJI or without a firsthand preforeclosure notices affidavit of service,or from filing any further submissions, other than to discontinue, in foreclosure actions in which an RJI was not filed with the summons and complaint.

125.    Enjoining Nassau Clerk O'Connell, George Peck, and Thomas A. Adams from handling, administering, or adjudicating foreclosure actions,

126.    Enjoining Agostino, Joseph, 8 Motions Clerks, from blocking submissions to the 2nd Department, adjudicating motions, from robosigning any signature, and from entering any judgment or order not actually signed by justices,

127.    Enjoining Eng, Sheinkman, and 2nd Department Appellate judges from permitting any judgment or order to be adjudicated by any party not elected to do so, permitting the use or representation of their names on any order in which they did not read the papers and adjudicate verified by a time log, and

permitting the signing or entry of any order or judgment which they did not actually sign.

128.    Enjoining any defendant who is an attorney from the practice of law.

129.    And Wherefore, Dekom requests permanent injunctive relief, as follows, that the preliminary injunction be made permanent.

130.    Additional and revised exhibits and supporting papers will be provided forthwith in support of this amended complaint.

## Further relief

And Wherefore, Dekom requests that relief of any type which the Court deems perfection of justice.

Submitted,

27 June 2018

Martin Dekom
34 High St.
Manhasset, NY 11030
516 850-2717
Martin.dekom@gmail.com

**CERTIFICATE OF SERVICE**

I hereby certify that on 27 June 2018, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, making it, for purposes of Fed. R. Civ. P. 5, served and filed in compliance with the Local Civil Rules of the Southern and Eastern Districts of New York.