Dekom – 12(b) RMOL - FINAL
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------x
MARTIN DEKOM,

                                                    17 CV 2712 JFB / ARL

              Plaintiff,

    v.

FANNIE MAE,
JUSTICE RANDALL ENG,
JUSTICE ALAN SCHEINKMAN,
JUSTICE R. BRUCE COZZENS,
JUSTICE THOMAS A. ADAMS,
JUSTICE GEORGE PECK,
APRILANNE AGOSTINO,
DARRELL JOSEPH,
WILLIAM RICCIO,
ELIZABETTA COSCHIGNANO, et al.
    [remaining defendants not listed]

                     Defendants.
-----------------------------------------------x

# JUDICIAL DEFENDANTS' REPLY MEMORANDUM OF LAW

BARBARA D. UNDERWOOD, Attorney
General of the State of New York
Attorney for Judicial Defendants
Ralph Pernick, Ass't.
Attorney General (of counsel)
200 Old Country Road – Suite 240
Mineola, New York  11501-4239
    516/ 248-3312  [direct #]
    516/ 248-3302  [main #]
    516/ 747-6432  [fax #]
Ralph.Pernick@ag.ny.gov

The Judicial Defendants (identified in the above caption) respectfully submit this reply in further support of their motion to dismiss, and for a filing injunction, in response to plaintiff's opposition (his affidavit [DE # 209] and his Opposition to Motion to Dismiss [DE # 210]).

Several preliminary points. First, although the Judicial Defendants sought a filing injunction, plaintiff does not address this issue, except to "[s]ee prior arguments" [DE # 210, page 29]. Second, one of the Judicial Defendants (Justice George Pech [sic; should be Peck]) has passed away.[1] Rule 25(a)(1) of the Federal Rules of Civil Procedure governs procedural matters where a party has passed away, and is quoted in the accompanying footnote for the *pro se* plaintiff's benefit.[2] Finally, since plaintiff cites no judicial decisions or statutes to support his contentions as to what the applicable law is, his *ipse dixit* statements carry no weight.

---

[1] See page following signature page for Justice Peck's obituary in the New York Law Journal.

[2] Rule 25(a)(1) states in full:

> If a party dies and the claim is not extinguished, the court may order substitution of the proper party. A motion for substitution may be made by any party or by the decedent's successor or representative. If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed.

Point-by-point response to plaintiff's opposition

DE # 210, page 28:

**1.** Plaintiff refers to "the Chavez testimony on the business records of an unnamed 'deal partner.'" The Judicial Defendants never made such a reference, and it appears that this objection was meant to respond to arguments made by other defendants.

**2.** The Eleventh Amendment only applies insofar as plaintiff is suing any of the Judicial Defendants in their official (as opposed to personal, a/k/a individual) capacity. A suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). [3] In addition, since "a State is not a 'person' under § 1983" (*Haywood v. Drown*, 556 U.S. 729, 734 note 4 [2009]), persons sued in their official capacity also are not "persons" under § 1983. *Will*, 491 U.S. at 71 ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983.").

**3.** The Supreme Court has expressly held that § 1983 does not abrogate a defendant's Eleventh Amendment immunity. *Quern v. Jordan*, 440 U.S. 332, 349 (1979) (" neither logic, the circumstances surrounding the adoption of the Fourteenth Amendment, nor the legislative history of the 1871 Act [now § 1983] compels, or even warrants, a leap from this proposition to the conclusion that

---

[3] Unless otherwise indicated, case quotations omit all internal quotation marks, alterations, footnotes, and citations.

Congress intended by the general language of the Act to overturn the constitutionally guaranteed immunity of the several States.").

4. The Supreme Court has also expressly held that the Eleventh Amendment bars *all* kinds of relief, not merely monetary relief, against States. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 58 (1996) ("we have often made it clear that the relief sought by a plaintiff suing a State is irrelevant to the question whether the suit is barred by the Eleventh Amendment"); *McGinty v. New York*, 251 F.2d 84, 91 (2001) (The Eleventh Amendment "bars suits that seek either money damages, ... or injunctive relief [against States, and thus with respect to official capacity claims against State officials as well"]).

5. Injunctive relief against State judicial officers is also barred by 42 U.S.C. § 1983: "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." (These exceptions are inapplicable here.)

6. As the Judicial Defendants have previously shown, clerks are protected by absolute judicial immunity. Plaintiff does not support his claim to the contrary by anything other than his own say-so.

7. In determining whether a defendant is entitled to absolute judicial immunity, the defendant's state of mind is simply irrelevant. "[J]udicial immunity is not overcome by allegations of bad faith or malice ..." *Mireles v. Waco*, 502 U.S. 9, 11 (1991).

<u>8.</u>     The Judicial Defendants' initial memorandum of law showed that absolute judicial immunity is applicable unless the judge acts in the complete absence of all subject matter jurisdiction [DE # 103, ECF pages 20]. Questions as to whether a judge is entitled to absolute judicial immunity must be determined most favorably to the judge. *Stump v. Sparkman*, 435 U.S. 349, 356 (1978) ("Because some of the most difficult and embarrassing questions which a judicial officer is called upon to consider and determine relate to his jurisdiction, the scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge"). Accordingly, plaintiff's claim that the Judicial Defendants actions were "ultra vires"—and it is unclear what plaintiff means in the context of this particular lawsuit—does not deprive any of them from absolute judicial immunity.

<u>DE # 210, pages 28-29:</u>

<u>9.</u>     We are unaware of any court decision holding that the "foreclosure inquest" procedure violates or is inconsistent with any legal requirement. To the contrary, Judiciary Law § 2-b(3) expressly authorizes a court of record (such as State Supreme Court) "to devise and make new process and forms of proceedings, necessary to carry into effect the powers and jurisdiction possessed by it."

But even without Judiciary Law § 2-b(3), the absence of any court decision holding that the "foreclosure inquest" procedure is unlawful means that each of the Judicial Defendants is protected from liability by the doctrine of

qualified immunity. [4]/ *Ashcroft v. al-Kidd*, 563 U. S. 731, 735 (2011) ("Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct"). Indeed, in upholding qualified immunity, the Supreme Court observed that "[a]t the time of al-Kidd's arrest, not a single judicial opinion had held [as *al-Kidd* contended] that pretext could render an objectively reasonable arrest pursuant to a material-witness warrant unconstitutional." *Al-Kidd*, 563 U.S. at 741. The Supreme Court recently described the contours of the "clearly established" requirement in *Carroll v. Carman*, 574 U. S. 13, – , 135 S.Ct. 348, 350 (2014) (per curiam):

> A government official sued under § 1983 is entitled to qualified immunity unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct. A right is clearly established only if its contours are sufficiently clear that a reasonable official would understand that what he is doing violates that right. In other words, existing precedent must have placed the statutory or constitutional question beyond debate.

DE # 210, page 29:

**10.** Since plaintiff's allegations that court clerk usurp judicial powers is entirely conclusory, his allegations are not entitled to be credited on a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[A] complaint is not required to have detailed factual allegations, but it demands more than an unadorned, the

---

[4]/ Qualified immunity is unrelated to and independent of other types of immunity asserted by the Judicial Defendants (absolute judicial immunity, and Eleventh Amendment immunity).

defendant-unlawfully-harmed-me accusation." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). Thus, when a court considers a Rule 12(b)(6) motion, it must disregard all legal conclusions in the complaint, because legal conclusions are not entitled to any presumption of truth and are not *factual* allegations. *Iqbal*, 556 U.S. at 678.

**11.** Similarly, plaintiff has not asserted anything besides conclusory allegations against Justices Eng, Scheinkman, and Adams.

\*     \*     \*     \*     \*     \*

In conclusion, the Judicial Defendants' motion should be granted in full. Plaintiff's contentions are nothing more than his unsupported—and incorrect—belief as to what the applicable law, and he has not responded to their showing that a filing injunction should be issued.

Respectfully submitted,

Barbara D. Underwood,
Attorney General of the State of New York
    Attorney for Judicial Defendants

By: _____     November 15, 2018
Ralph Pernick, Assistant
    Attorney General
200 Old Country Road – Suite 240
Mineola, New York  11501-4239
516/ 248-3312   [direct #]
         -3302   [main office #]
Ralph.Pernick@ag.ny.gov

☰ Menu
🔍 Search (/newyorklawjournal/search/)

New York Law Journal (/newyorklawjournal/)

LOOKING FOR AN EXPERT WITNESS?
POWERED BY LAW.COM
THOUSANDS OF EXPERT WITNESSES
SEARCH NOW
ALMEXPERTS

Publications (/publications/)  Law Topics (/topics/)  Surveys & Rankings (/rankings/)  Cases (/newyorklawjournal/case-digests/)

(https://store.law.com/Registration/Lo promoCode=NY&source=https%2Fwww.law.com%2Fnewyorklaw 2F2018%2F09%2F13%2Fjustice-geo who-pursued-notorious-murder- prosecutor-dies-at
SUBSC
PROMOCODE=NY&SOURCE=HTTPS:/ GE-PECK-WHO-PURSUE

News (/newyorklawjournal/news/)

# Justice George Peck, Who Pursued Notorious Murder Cases as Prosecutor, Dies at 75

Nassau County Supreme Court Justice George Peck, who during his stint as a prosecutor during a particularly violent era in the New York City metro area included a number of high-profile murder convictions, died on Wednesday. He was 75.

By **Andrew Denney** (/author/profile/Andrew-Denney/)  |  September 13, 2018 at 07:20 PM

f  in  y  G+  🖨  📄 (http://www.almreprints.com)



**Justice George R. Peck**

Nassau County Supreme Court Justice George Peck, who during his stint as a prosecutor during a particularly violent era in the New York City metro area included a number of high-profile murder convictions, died on Wednesday. He was 75.

Born in New York City in 1942, Peck obtained his J.D. from St. John's University School of Law in 1966; he earned an LL.M. from the New York University School of Law.

From there he spent a year working as a pension consultant for the Equitable Life Assurance Society, then moved on to the Nassau County District Attorney's Office, where he spent a cumulative total of 27 years, with a one-year break to clerk for Leo McGinity in 1976-77, when McGinity was a County Court judge.