UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MARTIN DEKOM *and on behalf of the Little People,*

                          Plaintiff,

            -against-

FANNIE MAE, BANK OF AMERICA NA (USA),
NATIONSTAR MORTGAGE LLC, NASSAU COUNTY
CLERK, ELISABETTA COSCHIGNANO, WILLIAM
RICCIO, BERKMAN HENOCH LAW FIRM, BRUCE R.
COZZENS, THOMAS A. ADAMS, GEORGE PECH,
ELLEN BRANDT, GROSS POLOWY LAW FIRM,
SANDELANDS EYET LAW FIRM, ERIK VALLELY,
MATTHEW BURROWS, BRIAN GOLDBERG,
HANS AUGUSTIN, LAURA STRAUSS, OSCAR PRIETO,
GEOFFREY JACOBSON, KEIRAN DOWLING,
LAURENCE CHIRCH, APRILANNE AGOSTINO,
DARRELL JOSEPH, RANDALL ENG, ALAN SHEINKMAN,
8 MOTIONS CLERKS, 2ND DEPARTMENT APPELLATE
JUDGES, PAWNS 1-100, and GOLDMAN SACHS AS
OWNER OF "POOL 1,"

**REPORT AND
RECOMMENDATION**
CV 17-2712 (JFB)(ARL)

                          Defendants.
------------------------------------------------------------X

**LINDSAY, Magistrate Judge:**

    Before the Court, on referral from District Judge Bianco, are the following motions:

    1.    The second motion of the *pro se* plaintiff, Martin Dekom ("Dekom"), seeking a change of venue [ECF No. 72];

    2.    Dekom's motion to expedite discovery and for equal protection [ECF No. 139];

    3.    The motion of the defendants, Berkman, Henoch, Peterson, Peddy & Fenchel, P.C. s/h/a Berkman Henoch Law Firm ("BHPPF"), Erick Vallely s/h/a Erik Vallely ("Vallely"), and Matthew Burrows ("Burrows") (collectively the "BHPPF defendants"), to dismiss the plaintiff's Third Amended Complaint [ECF No. 175];

    4.    The motion of the defendants, Gross Polowy, LLC s/h/a Gross Polowy Law Firm ("Gross Polowy"), Brian D. Goldberg, Esq. ("Goldberg"), Laura M. Strauss, Esq. ("Strauss") and Hans H. Augustin, Esq. ("Augustin") (collectively the "Polowy defendants"), to dismiss the plaintiff's Third Amended Complaint [ECF No. 180];

5.    The motion of the defendant Bank of America, N.A. ("BANA") to dismiss the plaintiff's Third Amended Complaint [ECF No. 181];

6.    The motion of the defendants, Nationstar Mortgage LLC ("Nationstar"), Federal National Mortgage Association s/h/a Fannie Mae ("Fannie Mae"), Sandelands Eyet LLP, Geoffrey Jacobson, Kieran Dowling s/h/a Keiran Dowling, Laurence Chirch, Ellen Brandt (collectively the "Fannie Mae defendants"), to dismiss the plaintiff's Third Amended Complaint [ECF No. 182];

7.    The motion of the defendants, Justice Thomas A. Adams, Aprilanne Agostino, Elisabetta Coschignano, Justice Bruce R. Cozzens, Justice Randall Eng, Darrell Joseph, the late Justice George Peck, William Riccio, Justice Alan Sheinkman (the "State Court defendants"), to dismiss the plaintiff's Third Amended Complaint [ECF No. 184];

8.    The motion of Goldman Sachs (hereinafter "MTGLQ") to dismiss the plaintiff's Third Amended Complaint [ECF No. 198];

9.    Dekom's motion for judgment on the pleadings or partial summary judgment as against Nassau County Clerk Maureen O'Connell ("O'Connell") [ECF No. 208]; and

10.    Dekom's motion objecting to the evidence submitted by the defendants in support of their motions [ECF No. 209].

For the reasons set forth below, the undersigned respectfully recommends that the defendants' motions be granted, and the plaintiff's motions be denied.   The undersigned further recommends that the plaintiff be directed to show cause as to why he should not be barred from filing future complaints related to the foreclosure action without leave of a court.

## BACKGROUND

The facts set forth in this report were drawn from the Third Amended Complaint together with "documents incorporated in it by reference" and "document[s] upon which the complaint heavily relies." *In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013).   The facts are taken as true for purposes of deciding the instant motion.[1]

---

[1] Dekom urges the Court to disregard the "evidence" or "argument" offered by the defendants in support of their

## A.     The BANA Mortgage

This case stems from a foreclosure action commenced by BANA in 2013.   In August 2007, Dekom, a formerly licensed mortgage loan originator, secured a mortgage loan from Countrywide Bank, FSB ("CBFSB") in the amount of $358,842.00.   *See* Lipkin Decl. Ex. A. The loan was secured by a mortgage on his property located at 34 High Street, Manhasset, New York in favor of Mortgage Electronic Registration System ("MERS"), as nominee and successor of CBFSB.   *Id.* Ex. B.   Countrywide endorsed the "interest only adjustable rate note" executed by Dekom to Countrywide Home Loans Inc.   *Id.* Ex. A.   The Mortgage was recorded with the Nassau County Clerk's Office on August 10, 2007 at Liber M32202, Pages 22-41.   *Id.* Ex. B. On or about December 28, 2011, MERS assigned the Mortgage to BANA (the "2011 Assignment").   *Id.* Ex. C.   The 2011 Assignment was recorded with the Nassau County Clerk's Office on March 10, 2012 at Liber M 36981, Pages 937-939.   *Id.*

In September 2013, BANA transferred servicing responsibilities to Nationstar.   BANA's Mem. at 2.   On June 17, 2014, BANA then assigned the Mortgage to Nationstar (the "2014 Assignment").   *Id.* Ex. D.   The 2014 Assignment was recorded with the Nassau County Clerk's Office on July 10, 2014 at Liber M 39791, Pages 796-797.   *Id.*

## B.     The State Court Actions

According to Dekom, by 2011, "[h]e was mortgaged to the hilt, and as the financial crisis

---

motions because discovery has been stayed and, according to him, the documents referred to in the defendants' motion papers have not been authenticated.   ECF No. 209.   The undersigned respectfully recommends that Dekom's motion dated November 8, 2018, which addresses this issue, be denied.   "[I]t is well-settled that, in considering a motion to dismiss, the Court is entitled to take judicial notice of documents integral to or referred to in the complaint, as well as documents filed in other courts and other public records." *Craig v. Saxon Mortg. Servs., Inc.*, No. 13-CV-4526 SJF GRB, 2015 WL 171234, at *1 (E.D.N.Y. Jan. 13, 2015) (quoting *Reyes v. Fairfield Props.*, 661 F. Supp. 2d 249, 255 n. 1 (E.D.N.Y. 2009).   In addition, "'[i]n resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings.'" *Id.* (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).

wore on for years, predictably, [he] couldn't pay his mortgage."   Third Am. Compl. ¶ 26. Specifically, Dekom admits that he stopped making mortgage payments in or around June 2011. ECF No. 43.   The complaint filed in the foreclosure action, which is discussed below, confirms that Dekom failed to make a payment of $1,941.91 for principal, interest and tax installments on July 1, 2011.   *See* Lipkin Decl. Ex. E, ¶11.   The complaint further provides that by reason of the default, BANA elected to declare the entire balance of the principle immediately due and owing as of June 2011.   *See id.* Ex. E.

Following his default in 2011, Dekom's mortgage loan license was revoked.   ECF No. 43.   Dekom claims that he was told by the state that he had to pay off the mortgage or "do a workout."   *Id.*   He refused to do so and chose, instead, to sue the state to reinstate his license "on the belief that being behind on [his] mortgage was merely ironic but did not make [him] less of a professional, any more than a divorce lawyer who himself is divorced is unfit to practice, or a dentist with a cavity." *Id.*   Accordingly, Dekom remained in default on his mortgage loan and after a year and a half, in January 2013, BANA sent him a pre-foreclosure notice in compliance with Real Property Actions and Proceedings Law § 1304.   *See* Lipkin Decl. Ex. E.

Despite being served with a pre-foreclosure notice, Dekom failed to remedy the default and, on July 17, 2013, BANA commenced a foreclosure action against him in the Nassau County Supreme Court.   *Id.*   Immediately upon receipt of the complaint, Dekom attempted to file a motion to dismiss the foreclosure action.   *See* Chirch Decl. Ex. F.   However, his motion was rejected by the court due to procedural deficiencies and his failure to pay the required fees.   *See id.* at Ex. G.   Nevertheless, according to the Fannie Mae defendants, on July 8, 2014, Dekom did appear at a foreclosure settlement conference held in accordance with N.Y. C.P.L.R. § 3408 Fannie Mae Mem. at 4.   A settlement was not reached, and thus, BANA filed its Note of Issue.

*Id.*  Upon receipt of the Notice of Issue, the action was scheduled for an inquest hearing.  *Id.*

On October 15, 2014, an inquest was held before the late Honorable George Peck.  *See* Lipkin Decl. Ex. F.  On October 30, 2014, Justice Peck issued a decision finding that BANA was entitled to a Judgment of Foreclosure in the amount of $432,939.06 as of October 7, 2014, with a contractual interest rate of 2.75% resulting in a per diem rate of $27.01 until entry of the order.  *Id.*  He also appointed a referee.  However, before the final judgment was entered, Dekom filed a "Motion to Reargue, Renew, and Stay" seeking, in part, the dismissal of the foreclosure action.  *See* Chirch Decl. Ex. I.  While that motion was pending, the Honorable Thomas A. Adams, entered the Judgment of Foreclosure and Sale.  *See* Lipkin Decl. Ex. F. The Judgment of Foreclosure and Sale, which is dated December 2, 2014, provided for the amendment of the caption to substitute Nationstar as the plaintiff in favor of BANA in accordance with the 2014 Assignment.  *Id.*  On December 11, 2014, the Judgment of Foreclosure was entered in the Nassau County Clerk's Office and was recorded on December 30, 2014 at Liber J 3837, Pages 233-245.  *Id.*

After the Judgment of Foreclosure and Sale was entered, Dekom filed a second motion, by order to show cause, seeking to vacate his default.  *See* Chirch Decl. Ex. K.  Justice Adams issued two orders dated April 16, 2015 and May 14, 2015 in which he denied both Dekom's motion to reargue and motion to vacate the default.  *See* Lipkin Decl. Ex. G.  Following the receipt of Justice Adam's decisions, Dekom appealed the Judgment and both state court orders to the Appellate Division, Second Department.  *Id.*  On May 16, 2018, the Appellate Division affirmed the Judgment of Foreclosure and Sale as well as the two orders denying his motions. *Id.*  In its decision, the Appellate Division noted that Nationstar had established personal

jurisdiction over Dekom,[2] and that Dekom had not provided a reasonable excuse for his default. *Id.*

### C.    The Fleet Mortgage

In the instant complaint, Dekom also refers to being "clobbered" with "an illegal second foreclosure lawsuit" (the "extinguishment action") while the first lawsuit was still pending. Third Am. Compl. ¶ 37.   According to the record, Dekom is referring to an action that was commenced by Nationstar to extinguish a 1985 mortgage on the property in the amount of $22,000.00.   *See* Lipkin Decl. Ex. H.   The 1985 mortgage was assigned to Fleet Finance ("Fleet") and BANA became the successor in interest pursuant to its merger with Fleet.   *Id.* Although it is not clear from the order annexed to BANA's papers, the complaint in the extinguishment action, which Dekom placed before this Court in January 2018, indicates that Nationstar commenced the extinguishment action simply to clear title to the property.   ECF No. 41 at 104-107.   Indeed, before the extinguishment action was filed, BANA had already received payment in full on the $22,000 loan but had failed to record the satisfaction.   After Nationstar filed the complaint in the extinguishment action, BANA recorded the satisfaction, which rendered that action moot, so Nationstar moved to voluntarily discontinue the case.   *See* Lipkin Decl. Ex. H.   Dekom was named as a defendant in the extinguishment action due to his interest in the property.   He also filed several motions in that action.   The order discontinuing the

---

[2] Dekom's motions were based, in part, on the adequacy of service.   However, the state court found that the process server had made four separate visits to his residence at different times when Dekom could reasonably have been expected to be found at home.   *See* Lipkin Decl. Ex. G.   The process server also described the means she used to verify the Dekom's residential address and described her unsuccessful attempt to ascertain his place of employment. Accordingly, the appellate division held that the due diligence requirement had been satisfied, which permitted the process server to affix a copy of the summons and complaint to the door of the defendant's residence, and then to mail a copy to the residence by first class mail, which she did.   *Id.*

extinguishment action denied Dekom's motion for default judgment and cross-motion for default judgment and dismissed his cross-claims and counterclaims.   *Id.*

### E.    Procedural History

Two years after the Judgment of Foreclosure and Sale was entered by the state court, Dekom commenced the instant action against Fannie Mae, BANA, Nationstar and O'Connell. ECF No. 1.   Dekom initially filed this action in the United States District Court for the District of Columbia.   However, by order dated April 26, 2017, the D.C. District Court transferred the matter to this Court finding that venue was improper.   ECF No. 6.   Four days later, Dekom filed a motion with the Court that was construed as a motion to dismiss the case without prejudice. ECF No. 12.   As such, on May 16, 2017, the Clerk of the Court was directed to close the case.

On May 23, 2017, Dekom asked the Court to reopen the case and to reassign the matter to Judge Spatt.   ECF No. 14.   Dekom advised that he had never intended to voluntarily dismiss the case.   *Id.*   He also accused someone in the Court of "jimmying the 'related case' system." *Id.*   Specifically, Dekom argued:

> The other error was in the "related case" designation.   The rule itself is an exercise in legitimizing corruption and should be discarded.   In fact, I proposed exactly this last week to the Board of Judges of the United States District Court for the Eastern District of New York.
>
> Notwithstanding the rule's fundamental flaws, its application here shows that my cases are being steered to Judge Seybert.   In 2005, I brought a housing finance action which was assigned to Hon. Spatt.   In 2012, I brought two actions, one on ballot access, the other against the Nassau Board of Elections. The "related case" rule should have assigned these to Hon. Spatt, but they ended up before Judge Seybert.
>
> By rule, related cases are assigned to the lowest docket number.   Of my three prior cases, Judge Spatt was on the lowest number, from 2005.   The newly transferred *Dekom v. Fannie Mae* was not assigned to Judge Spatt, but to Seybert.

*Id.*   Upon receipt of his application, the case was reopened and, shortly thereafter, Judge Seybert

recused herself.    See ECF No. 17.    The case was randomly assigned to District Judge Bianco

and the undersigned.    Following the reassignment, Dekom once again asked to have the case

reassigned to "other judges" arguing, that the assignment was "not the product of random

assignment."    ECF No. 20.    After his motions for recusal had been denied, Dekom asked to

have his case transferred back to the District of Columbia.    ECF No. 24.    By order dated

November 29, 2017, that motion was also denied.    ECF no. 29.

   The Court did, however, grant Dekom leave to proceed *in forma pauperis*.    *Id.*

Accordingly, in December, the Court forwarded documents to the U.S. Marshal's who attempted

to effectuate service of the original complaint.    However, on January 25, 2018, Dekom filed his

first amended complaint adding many of the defendants now named in the complaint.    Then, in

mid-February, the Court established a briefing schedule for the defendants' anticipated motions

to dismiss the first amended complaint.    However, while the parties were in the process of

briefing those motions, Dekom filed a second amended complaint.    ECF No. 57.    Attempting to

keep pace with the plaintiff's filings, the Court continued to establish amended briefing

schedules.    Yet, notwithstanding the Court's efforts to efficiently handle the multitude of filings

by the plaintiff, on June 27, 2018, with most of the defendants' motions fully briefed and filed or

near completion, Dekom filed a third amended complaint.    ECF No. 144.

   On July 16, 2018, the undersigned held a conference with all the parties, at which time

the third amended complaint was deemed the operative pleading.    For the sake of judicial

economy, the defendants agreed to withdraw their pending motions to dismiss and to refile

amended motions based on the claims set forth in the Third Amended Complaint.    However,

given Dekom's filing history and the prejudice to the defendants that had already resulted from

Dekom's conduct, the Court barred Dekom from filing any additional amended pleadings or

seeking leave to amend his complaint until the Court had an opportunity to address the motions now pending before the Court.

In his third amended complaint, Dekom alleges that the defendants, including court personnel from the Nassau County Supreme Court and the New York Appellate Division, Second Department, engaged in an "illegal process," a "racket," harassment and coercion, a "fraudulent court," a "fake hearing," "public corruption," "legal weirdness," "fraud," and "collusion," which he says included the removal and alteration of public records, and "influencing the selection of judges."   Third Am. Compl. ¶¶ 29-35.   Dekom brings this matter on behalf of himself and "the poor of America in or facing judicial foreclosure, who are ill-equipped to fight the professional liars employed by Fannie Mae's agents, who stand to be victimized by them, and who have a God given right to have their day in court without being shorn of all human dignity."   Third Am. Comp. ¶ 7.   Although Dekom does not dispute that he defaulted on his loan, Dekom describes the foreclosure process as a "perversion of the law" and suggests that his Judgment of Foreclosure and Sale was "illegally obtained." *Id.* ¶¶ 26, 28. Specifically, Dekom describes the foreclosure inquest as "a mix of public corruption and a cabal of mortgage industry insiders to serve as their private court [that does] not exist in any law and is illegal." *Id.* ¶ 31.   Dekom also claims that he uncovered collusion in the appellate division, which, he says, led to his discovery of a 'robosigning scam,'" as well as a scam allegedly perpetrated by the Nassau County Clerk.   *Id.* ¶¶ 35, 40.

In sum, Dekom claims that the foreclosure process is fraught with illegality. Accordingly, he has asserted the following claims:

1.   violation of the Real Estate Settlement Procedures Act ("RESPA") and the Truth in Lending Act ("TILA") as against Fannie Mae, Nationstar, and BANA (claim one);

2.    violation of the Fair Debt Collection Practices Act as against Fannie Mae, Nationstar, and BANA ("FDCPA") (claim two);

3.    violation of the DC Consumer Protection Procedures Act as against Fannie Mae, Nationstar, and BANA ("DC CCPA") (claim three);

4.    "fraud and wrongful foreclosure" as against Fannie Mae, Nationstar, and BANA (claim four);

5.    "malicious prosecution" as against Fannie Mae, Nationstar, and BANA (claim five);

6.    violation of Due Process, Equal Protection, 1st Amendment political speech as against O'Connell, Justice Peck and Justice Adams (claim six);

7.    violation of Due Process, Equal Protection, 1st Amendment political speech as against "Clerk Agostino, Deputy Clerk Joseph, 8 Motions Clerks, Chief Judges Randell Eng and Alan Sheinkman, and the Appellate Judges of the 2nd Department (claim seven); and

8.    violation of the Racketeering Influence Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) and (d) as against all defendants (claim eight).

**F.    The Defendants**

Dekom has named twenty-six defendants exclusive of the "8 motion clerks, 2nd Departments Appellate Judges and Pawns 1-100."   The allegations he has asserted with respect to the defendants are, at best, vague.   Nonetheless, to provide a context for this report, the Court has attempted to summarize Dekom's allegations with respect to the defendants whose involvement may not be obvious from the factual recitation set forth above:

1.  Dekom alleges that Fannie Mae is a government sponsored enterprise that benefits from the foreclosure "racket" because "every foreclosure generates a tangible financial benefit which is used as a patronage award to the politically connected."

2.  Dekom alleges that "Goldman Sachs" or "Pool 1" is the alias for the entity

10

that is claiming ownership of the mortgage at 34 High Street, Manhasset, NY.[3]

3.   Dekom alleges that Sandelands Eyet was the law firm retained to prosecute him.   Geoffrey Jacobson, Kieran Dowling, and Laurence Chirch are attorneys employed by Sandelands Eyet.   Dekom contends that all the Sandelands Eyet defendants are agents of Fannie Mae.   The defendants have clarified that they were retained by Nationstar to represent the company with respect to the two appeals filed by Dekom in the state court.

4.   Dekom alleges that Ellen Brandt is an employee of Nationstar, who "fraudulently posed as a witness" at the October 30, 2014 inquest hearing in the foreclosure action.

5.   BHPPF is the law firm that was retained by BANA to commence the foreclosure action.   Erick Vallely and Matthew Burrows are attorneys employed by BHPPF.

6.   Gross Polowy is a law firm that was retained to represent Nationstar in the foreclosure and extinguishment action.   After the foreclosure proceeding was commenced by BHPFF, the Gross Polowy, LLC was substituted as counsel. Brian Goldberg and Laura Strauss are attorneys employed by Gross Polowy. Hans Augustin is a former attorney.   Oscar Prieto, who has not appeared in this action, is referred to a subcontracted attorney with Gross Polowy.

7.   Maureen O'Connell (O'Connell) was the Nassau County Clerk during the relevant period.   O'Connell has not appeared in this action.[4]

8.   Justices Randall Eng and Alan Sheinkman are Appellate Division Justice. Justices R. Bruce Cozzens, Thomas A. Adams and George Peck are Justices of the Nassau County Supreme Court.   Aprilanne Agostino is the Chief Clerk of the Appellate Division.   Darrell Joseph is the Deputy Clerk of the Appellate Division.   William Riccio and Elisabetta Coschignano are law secretaries at the Nassau County Supreme Court.   All the State Court defendants are alleged to have been involved in the foreclosure action.

---

[3] According to MTGLO, Dekom is operating under the misassumption that his loan was purchased by Goldman Sachs in 2017, three years after the foreclosure action.   Edward B. Chavez, who was the transaction manager for MTGLQ during the relevant period, explained that Dekom's loan was included initially in an offering made to MTGLO in 2016, but the loan was kicked out of that offering before the sale.   *See* Chavez Aff. ¶¶ 2, 5-8.

[4] Dekom has filed a motion for a default judgment as against O'Connell.   ECF No. 208.   Notwithstanding the fact that Dekom claims that O'Connell was served with the Third Amended Complaint on September 10, 2018, given the Court's findings with respect to subject matter jurisdiction, the undersigned recommends that the plaintiff's motion be denied.

## DISCUSSION

1.    **Standards of Review**

    A.    **Rule 12(b)(1)**

    The defendants each move to dismiss the complaint under Rule 12(b)(1) and 12(b)(6). "'When a defendant moves to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, and also moves to dismiss on other grounds, . . . the Court must consider the Rule 12(b)(1) motion first.'" *Craig x. Saxon Mortg. Servs., Inc.*, No. 13-CV-4526, 2015 WL 171234, at *4 (E.D.N.Y. Jan. 13, 2015) (quoting *Bobrowsky v. Yonkers Courthouse*, 777 F. Supp. 2d 692, 703 (S.D.N.Y. 2011)).   "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).   "[T]he court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it."   *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008)(citations and internal quotation marks omitted), *aff'd*, 561 U.S. 247 (2010).   In resolving a motion to dismiss for lack of subject matter jurisdiction, the Court may consider relevant documents that are extrinsic to the complaint.   *See id.*

    B.    **Rule 12(b)(6)**

     "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *See Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 162 (E.D.N.Y. 2010), *aff'd,* 446 F. App'x 360 (2d Cir. 2011) (citing *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir.2010)).   The Supreme Court clarified the appropriate pleading standard

in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), in which the court set forth a two-pronged approach to be utilized in analyzing a motion to dismiss.   District courts are to first "identify [ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679.   Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.*   Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.   The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a [d]efendant has acted unlawfully." *Id*. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007) (internal citations omitted)).

Where, as here, the complaint was filed by a *pro se* litigant, the court must construe the complaint liberally and interpret the complaint "to raise the strongest arguments they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006).   However, a *pro se* complaint must state a plausible claim for relief, *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013), and mere conclusions of law unsupported by factual averments need not be accepted, *Klos v. Bligh*, No. 13‑CV‑5449, 2014 WL 3778993, at *5 (E.D.N.Y. July 31, 2014).   Lastly, "'[i]t is well-settled that, in considering a motion to dismiss, the Court is entitled to take judicial notice of documents integral to or referred to in the complaint, as well as documents filed in other courts and other public records'" *Craig*, 2015 WL 171234, at *1 n.3 (quoting *Reyes v. Fairfield Props.*, 661 F. Supp. 2d 249, 255 n.1 (E.D.N.Y. 2009)).

## II.     Eleventh Amendment

As an initial matter, the State Court defendants contend that the Eleventh Amendment

and sovereign immunity deprive this Court of subject matter jurisdiction to the extent Dekom is

suing the State Court defendants in their official capacity.    The Eleventh Amendment to the

United States Constitution provides that "[t]he Judicial Power of the United States shall not be

construed to extend to any suit in law or equity, commenced or prosecuted against one of the

United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

U.S. Const. amend. XI.    Indeed, the Supreme Court has made clear for over a century "that the

Constitution does not provide for federal jurisdiction over suits against non-consenting states."

*Nevada Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 726 (2003) (citations omitted).    Eleventh

Amendment immunity also extends "to entities considered arms of the state, such as state

agencies." *Walker v. City of Waterbury*, 253 F. App'x 58, 60 (2d Cir. 2007) (internal citations

omitted); *see also Smith v. The New York State Dep't of Correctional Servs*., No. 08 Civ.

7090(GBD)(RLE), 2010 WL 1192057, at *2 (S.D.N.Y. Mar. 1. 2010) (the Eleventh Amendment

bars suits against a state agency regardless of the nature of the relief sought, including suits in

equity).

In addition, State officials sued in their official capacities for money damages are not

considered "persons" within the meaning of 42 U.S.C. § 1983.    *See Will v. Mich. Dep't of State

Police,* 491 U.S. 58, 71 (1989).    The 1996 amendments to 42 U.S.C § 1983 also preclude

injunctive relief against judicial officers.    Specifically, those amendments provide that "in any

action brought against a judicial officer for an act or omission taken in such officer's judicial

capacity, injunctive relief shall not be granted unless a declaratory decree was violated, or

declaratory relief was unavailable." *Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999) (citing

Federal Courts Improvement Act of 1996, § 309(c), Pub.L. No. 104–317, 110 Stat. 3847, 3853

(1996) (amending 42 U.S.C. § 1983)).    Here, Dekom has not alleged the violation of a

14

declaratory decree or the unavailability of declaratory relief.   Accordingly, for all these reasons, the undersigned finds that the claims against the State defendants in their official capacities are barred by the Eleventh Amendment and recommends that those claims be dismissed for lack of subject matter jurisdiction.

## II.       Preclusion Principles

Each of the defendants argues that the plaintiff's claims are barred by the *Rooker-Feldman* doctrine, collateral estoppel and *res judicata,* and therefore, the Court lacks subject matter jurisdiction to hear this action.   The undersigned agrees.

### A.        Rooker-Feldman Doctrine

The *Rooker-Feldman* doctrine precludes a federal court from entertaining "cases brought by state-court losers complaining of injuries caused by state court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indis. Corp*., 544 U.S. 280, 284 (2005).   *Rooker-Feldman* also precludes federal district courts from exercising jurisdiction over claims that are "inextricably intertwined" with state court determinations.   *Kropelnick v. Siegel*, 290 F.3d 118, 128 (2d Cir. 2002) (quoting *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482-83 n.16, 103 S. Ct. 1303, 75 L. Ed 2d 206 (1983)).   This doctrine recognizes that "federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments."   *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005).   Indeed, "[u]nderlying the *Rooker-Feldman* doctrine is the principle, expressed by Congress in 28 U.S.C. § 1257, that within the federal judicial system, only the Supreme Court may review state-court decisions." *Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009).

The Second Circuit has identified four elements that must be met for the *Rooker-Feldman*

doctrine to divest a court of subject matter jurisdiction:

> First, the federal-court plaintiff must have lost in state court.   Second, the plaintiff must 'complain[ ] of injuries caused by [a] state-court judgment[.]' Third, the plaintiff must 'invit[e] district court review and rejection of [that] judgment[ ].' Fourth, the state-court judgment must have been 'rendered before the district court proceedings commenced'—i.e., *Rooker–Feldman* has no application to federal-court suits proceeding in parallel with ongoing state-court litigation.

*Hoblock,* 422 F.3d at 85.   The first and fourth requirements have been classified as "procedural" and the second and third requirements as "substantive." *Caldwell v. Gutman, Mintz, Baker & Sonnenfeldt, P.C.*, 701 F. Supp. 2d 340, 346 (E.D.N.Y. 2010).

In this case, the procedural requirements have clearly been met.   First, Dekom lost in state court as evidenced by Judgment of Foreclosure and Sale.   He also lost in the extinguishment action referenced in his complaint because his motion for default judgment and cross-motion for a default judgment was denied and the court dismissed his cross-claims and counterclaims in its order discontinuing that action.

The second procedural requirement has also been met although this requirement warrants a more detailed discussion.   Here, the Judgment of Foreclosure and Sale was entered two years and four months before this case was commenced.   However, some courts have found the *Rooker–Feldman* doctrine inapplicable in cases where state appeals are still pending when the plaintiff files the federal suit.   *Id*. at 346 (collecting cases).   "Other courts, . . . have applied *Rooker–Feldman* as long as the federal action seeks review of a previous state court judgment, regardless of whether that judgment is being appealed in the state courts when the federal case begins." *Id*. at 347 (quoting *Schuh v. Druckman & Sinel, L.L.P.,* No. 07 Civ. 366 (LAK)(GWG), 2008 WL 542504, at *5, 2008 U.S. Dist. LEXIS 15079, at *16 (S.D.N.Y. Feb. 29, 2008) ("That the [plaintiffs] are still in the process of appealing the state court decision is irrelevant to the

16

*Rooker–Feldman* analysis.")).    Generally, the courts in this district have followed the latter

approach.    *Id.* ("This purpose would be undermined if the doctrine is inapplicable simply

because a litigant happens to be seeking state appellate review of a state-court judgment, while

also seeking federal district court review of that judgment.").    This is so because "regardless of

the status of the appeal, the plaintiff is still seeking review of a state court judgment."

Interestingly, in this matter, the initial complaint was filed before the appeal was finalized.

However, the operative pleading, that being, the third amended complaint, was filed on June 27,

2018, forty-two days after the Appellate Division affirmed the state court decision.

Nonetheless, even if the Court were to consider the date the initial complaint was filed, the

precedent in this district supports a finding that the procedural requirements have been met.

The substantive requirements of *Rooker-Feldman* have also been met.    Indeed, there is

no doubt that Dekom is complaining of injuries caused by the state court judgment and is asking

this Court to review and reject those findings.    Claims One through Four and Eight allege that

the Judgment of Foreclosure and Sale was "illegally obtained." Claim Five challenges the order

that discontinued the extinguishment action.[5]    Dekom seeks actual damages in a variety of

amounts - $922,000 from Nationstar for the depravation of the value of his house; $359,703 from

Fannie Mae resulting from his deprivation of monthly income connected to the house; $287,666

from MTGLQ based on a percentage of the principal balance of the loan; punitive damages in

the amount of $9,000,000 resulting from the "shocking and heinous conduct of the defendants;"

and $200 billion dollars from Fannie Mae to compensate parties whose mortgages were collected

---

[5] Dekom has made his true objective for bringing this action clear in his numerous motion papers filed with the Court.    For example, in January 2018, Dekom filed a 407-page document with the court containing papers from his foreclosure appeal, along with a declaration in which he expressly challenges the foreclosure proceeding (e.g., "I attempted to raise my motion to dismiss but was denied.    The judge prevented me from asking pertinent questions.").    See ECF Nos. 40, 43.

on more than once.   *See* Third Am. Compl. ¶¶ 99-109.   Dekom also seeks to enjoin Fannie

Mae, Nationstar, and BANA from receiving the proceeds from the Judgment of Foreclosure and

Sale and from interfering with or stating facts which conflict with his two Motions to Dismiss

(Aug 2013 and May 2016 - amended June 2016), and Answer (Nov 2016).   *Id.* ¶¶ 99-109, 122.

Finally, Dekom seeks to enjoin O'Connell and the state court defendants from "handling,

administering or adjudicating foreclosure actions" such as his; the state court clerks from

entering judgments; and the Appellate Division judges from "robosigning any signature or from

entering any judgment not actually signed by them." *Id.* ¶¶ 125-127.

Moreover, it is well settled, that "a federal plaintiff cannot escape the *Rooker-Feldman*

bar simply by relying on a legal theory not raised in state court." *Andrews*, 2015 WL 1509511, at

\*5 (citations and internal quotation marks omitted).   For this reason, "[d]istrict courts in this

circuit routinely cite *Rooker-Feldman* in dismissing RICO claims that attempt to raise alternative

challenges to actions already rejected by the state courts." *Pharr v. Evergreen Garden, Inc.,* 123

F. App'x 420, 423 n.2 (2d Cir. 2005).   Similarly, to the extent Dekom has asserted a FDCPA

claim as an alternative challenge to foreclosure proceeding, his claims are foreclosed.   *See*

*Quiroz v. U.S. Bank. Nat'l Ass'n, No.* 10-CV-2485, 2011 WL 2471733, at \*6 (E.D.N.Y. May 16,

2011) ("[A]ny FDCPA claim based on the falsity of the debt is barred by *Rooker-Feldman*

because it would be inextricably intertwined with [the state court's order of foreclosure and sale]

which held [the creditor] had a valid right to collect the debt."), *report and recommendation*

adopted by, 2011 WL 3471497 (E.D.N.Y. Aug. 5, 2011).   By the same token, Dekom's RESPA

and TILA claims asserted against Fannie Mae, Nationstar, and BANA, as well as his due

process, equal protection, First Amendment and state law claims are "inextricably intertwined"

with the state court judgment.   *See Goldberg v. Roth*, No. 99–CV–11591, 2001 WL 1622201, at

*5 (S.D.N.Y. Dec. 17, 2001) ("Plaintiff cannot make an end run around the *Rooker-Feldman*

doctrine and into federal court . . . through the mere assertion of new and baseless claims to

supplement the old.").   Accordingly, the undersigned finds that Dekom's claims are barred by

the *Rooker-Feldman* doctrine, and thus, respectfully reports and recommends that the

defendants' motions to dismiss be granted.

### B.   *Res Judicata* and Collateral Estoppel

The Court may also dismiss Dekom's claims on the grounds of *res judicata* and collateral

estoppel.   *See Salahuddin v. Jones*, 992 F.2d 447, 449 (2d Cir. 1993)*; Wilson v. Ltd. Brands*,

No. 08 CV 3431(LAP), 2009 WL 1069165, at *4 (S.D.N.Y. Apr. 17, 2009).   *Res judicata*

provides that "a final judgment on the merits of an action precludes the parties or their privies

from relitigating issues that were or could have been raised in that action." *Burgos v. Hopkins*, 14

F.3d 787, 789 (2d Cir. 1994); *see also Done v. Wells Fargo Bank, N.A.,* No. 08-CV-3040 JFB

ETB, 2009 WL 2959619, at *3 (E.D.N.Y. Sept. 14, 2009) ("All litigants, including *pro se*

plaintiffs, are bound by the principles of *res judicata*").   As the Second Circuit explained in

*Marcel Fashions Group, Inc. v. Lucky Brand Dungarees, Inc.,* 779 F.3d 102 (2d Cir. 2015):

> The term *res judicata*, which means essentially that the matter in the
> controversy has already been adjudicated, encompasses two significantly
> different doctrines: claim preclusion and issue preclusion.   Under claim
> preclusion, a final judgment forecloses successive litigation of the very same
> claim, whether or not relitigation of the claim raises the same issues as the
> earlier suit.   The doctrine precludes not only litigation of claims raised and
> adjudicated in a prior litigation between the parties (and their privies), but also
> of claims that might have been raised in the prior litigation but were not.   The
> doctrine of issue preclusion, in contrast, bars successive litigation of an issue
> of fact or law actually litigated and resolved in a valid court determination
> essential to the prior judgment, even if the issue recurs in the context of a
> different claim.

*Fequiere v. Tribeca Lending*, No. 14-CV-812 (RRM)(LB), 2016 WL 1057000, at *5 (E.D.N.Y.

19

Mar. 11, 2016) (quoting *Marcel*, 779 F.3d at 107 (citations and internal quotation marks omitted)).   In sum, under the *res judicata* doctrine, "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if [the claims are] based upon different theories" or asserted against new parties in privity to the parties in the prior litigation.   *See Sosa v. JP Morgan Chase Bank*, 33 A.D.3d 609, 611, 822 N.Y.S.2d 122 (2d Dept. 2006); *Houdet v. U.S. Tennis Ass'n,* No. 13-CV-5131 (FB) (LB), 2014 WL 6804109, at *4 (E.D.N.Y. Dec. 3, 2014) (finding *res judicata* to apply "not just to the parties in a prior litigation but also to those in privity with them" where the "new defendants have a sufficiently close relationship to justify [its] application")).

Here, the requirements for *res judicata* are met.   First, the foreclosure and extinguishment actions were previous adjudications on the merits.   Second, the requirement that the previous action involved [the party against whom res judicata is invoked] or its privy is also met.   Although Dekom's true purpose in bringing this action is somewhat masked by his voluminous filings, as stated above, the crux of Dekom's complaint is a challenge to the legitimacy of the foreclosure action and the orders issued by the state court in the extinguishment action.   Indeed, to find for Dekom on any of his claims would require this Court to overrule the state's determination that Nationstar was entitled to foreclose on Dekom's home to satisfy the outstanding loan or that the extinguishment action was moot.   In addition, although Dekom did not assert claims under RESPA, TILA, FDCPA, DC CCPA and RICO in the state actions, he certainly had the opportunity to do so.   *See D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 483 (1983) ("By failing to raise his claims in state court a plaintiff may forfeit his right to obtain review of the state court decision in any federal court.").

In a similar vein, the issues now being raised by Dekom are barred by the doctrine of

collateral estoppel.   "[C]ollateral estoppel . . . means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Caldwell v. Gutman, Mintz, Baker & Sonnenfeldt, P.C.*, 701 F. Supp. 2d 340, 349-50 (E.D.N.Y. 2010) (citing *Leather v. Eyck*, 180 F.3d 420, 424 (2d Cir. 1999) (quoting *Schiro v. Farley*, 510 U.S. 222, 232, 114 S. Ct. 783, 127 L. Ed. 2d 47 (1994)).   "Collateral estoppel, like the related doctrine of *res judicata*, has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Id. (*citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326, 99 S. Ct. 645, 58 L. Ed. 2d 552 (1979)).   Specifically, "[u]nder New York law, collateral estoppel bars relitigation of an issue when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action."   *In re Hyman*, 502 F.3d 61, 65 (2d Cir. 2007) (citations omitted). "The party seeking the benefit of collateral estoppel bears the burden of proving the identity of the issues, while the party challenging its application bears the burden of showing that he or she did not have a full and fair opportunity to adjudicate the claims involving those issues.   *Khandhar v. Elfenbein*, 943 F.2d 244, 247 (2d Cir. 1991) (citation omitted).   Here, many, if not all, of the issues raised by Dekom were decided by the state court in the foreclosure and extinguishment actions, and Dekom had a full and fair opportunity to litigate those issues.   Accordingly, the undersigned finds that the claims raised by Dekom are also bared by the doctrines of *res judicata* and collateral estoppel, and thus, recommends that the Third Amended Complaint be dismissed in its entirety.

## IV.     Failure to State a Claim

Given the Court's determination that the case should be dismissed for lack of subjection matter jurisdiction, the undersigned need not address the multitude of cogent Rule 12(b)(6) arguments raised by the defendants.

## V.      Dekom's Motion to Change Venue and to Expedite Discovery

For the reasons outlined in this report, the undersigned also recommends that Dekom's motion to transfer the case back to the District of Columbia as well as his request to expedite discovery be denied.   ECF Nos. 72, 139.

## VI.     Filing Injunction

The undersigned believes that Dekom's frequent filings are detracting from the legitimate cases before the Court. "'The district courts have the power and the obligation to protect the public and the efficient administration of justice from individuals who have a history of litigation entailing vexation, harassment and needless expense to other parties and an unnecessary burden on the courts and their supporting personnel.'" *Mallgren v. Burkholder*, 52 F. Supp. 3d 490, 497– 98 (E.D.N.Y. 2014) (citing *Lau v. Meddaugh*, 229 F.3d 121, 123 (2d Cir.2000) (internal quotations and citations omitted)).   Dekom has demonstrated a history of filing frivolous lawsuits, and therefore, the Court may impose sanctions, including restrictions on future access to the judicial system without seeking leave of the Court.   Accordingly, the undersigned further recommends that the plaintiff be directed to show cause as to why he should not be barred from filing future complaints related to the foreclosure action without leave of a court.

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and

Recommendation to file written objections.   Such objections shall be filed with the Clerk of the Court via ECF, except in the case of a party proceeding *pro se*.   Dekom must file his objections in writing with the Clerk of the Court within the prescribed time period noted above.   Any requests for an extension of time for filing objections must be directed to Judge Bianco prior to the expiration of the 14-day period for filing objections.   Failure to file objections within this period waives the right to appeal the District Court's Order.   *See* 28 U.S.C. § 636(b)(1); Fed R. Civ. P 72; *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.,* 596 F.3d 84, 92 (2d Cir. 2010); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchant's Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated:  Central Islip, New York
         February 26, 2019

                                        _____/s/_____
                                        ARLENE R. LINDSAY
                                        United States Magistrate Judge